United States District Court
Southern District of Texas
**ENTERED**
October 31, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRELL JACOBY MARK, TDCJ #02054187, | § § § | |
| Plaintiff, VS. | § § § | CIVIL ACTION NO. H-17-2784 |
| RONALD HICKMAN, *et al*, | § § § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Darrell Jacoby Mark (TDCJ #02054187) ("Mark") is an inmate presently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division. He brings civil rights claims pursuant to 42 U.S.C. § 1983 against all Defendants and a related state law claim against Defendant Detention Officer Vanesha Lashon Lee ("Lee") for acts and omissions that occurred while he was a pre-trial detainee in the Harris County Jail ("Jail"). Although Mark originally filed this case *pro se*, he is now represented by counsel. Pending is Defendants Sheriff Ronald Hickman's and Sergeant John Revelle's Motion to Dismiss (Doc. No. 72). The Court has carefully considered the pleadings, motion, response, and applicable law, and concludes as follows.

**I.  BACKGROUND**

The following allegations, which the Court accepts as true for the purposes of this motion to dismiss, are set forth in the Mark's Amended Complaint.[1]

On July 26, 2015, Mark's uncle, Roald Mark ("Uncle Roald"), came to the Jail to visit Mark and waited for hours to see him, but no one brought Mark to the visitation room. Because

---

[1] *See generally* Amended Complaint ("AC"), Doc. No. 68 at ¶¶ 12-38.

1 / 17

Mark missed this visit with his uncle, he filed a grievance against Lee, who was the guard on duty in his pod at the time.

On August 10, 2015, Defendant Sergeant John Revelle ("Revelle"), Lee's direct supervisor, called Mark into his office to discuss the grievance. At that meeting, Revelle offered to double Mark's visitation time so that the grievance against Lee could be closed. Mark declined the offer and explained that he wanted steps taken to prevent similar conduct in the future. That same day, Revelle spoke to Lee about the grievance. Lee then confronted Mark and demanded that he withdraw the grievance because it was the second one she had received and her job was in jeopardy unless Mark withdrew his grievance. Mark refused, indicating that he would need to talk to his uncle because it was his uncle's time that was wasted. Uncle Roald supported Mark's decision not to withdraw the grievance and told Mark that Lee could call him if she wanted to know his reasons. Lee called Uncle Roald to request that Mark withdraw the grievance, but he refused. Lee told Uncle Roald that she might lose her job, but this did not persuade him to change his mind.

Shortly thereafter, Mark learned that Lee had ties to several inmates who could harm him. As a result of intimidation and fearing for his safety, Mark submitted false statements on August 11, 2015 and August 13, 2015, indicating that the grievance had been resolved.

Lee was the subject of at least two Internal Affairs ("IA") investigations that were pending at the time Mark filed his grievance: (1) IAD #15-0390-0501, initiated April 2015, regarding an incident where one inmate was missing for an entire day because Lee did not properly account for the inmates in her pod, and IA considered Lee untruthful in the course of the investigation; and (2) IAD #15-0439-0515, initiated May 2015, regarding an incident where Lee transported an inmate without proper restraints and at least one detention officer was injured

as a result.

On September 1, 2015, IA initiated a third investigation (IAD #2015-00735) in connection with allegations that Lee was dating an inmate and smuggling contraband into the Jail for that inmate. On September 10, 2015, Lee was suspended for 3 days with 90 days probation after the Administrative Disciplinary Committee sustained IAD #15-0390-0501, the April 2015 investigation, regarding Lee's failure to account for an inmate and being untruthful in the course of the investigation.

On September 13, 2015, Lee, apparently unaware that Mark had withdrawn the grievance, confronted him and demanded that he retract his grievance. At that time, Lee threatened Mark, telling him, "You don't know me, you don't know who I am, but you're about to find out soon enough." Unsure of how to respond, Mark returned to his housing pod, Pod 6E.

Lee then granted inmate Kenneth Foley, who resided in Pod 6D, access to Pod 6E. Lee did not document Foley's access to Mark's pod. As soon as Foley gained access to Mark's pod, he asked, "Who is Mark?" Lee had given Mark's name to Foley and ordered him to intimidate Mark. When Foley found Mark, he asked Mark if he wrote a grievance against Lee, and Mark responded that he had done so because of his missed visitation. Foley told him not to pursue the grievance because the inmates needed people like Lee to "get stuff," meaning contraband. Foley asked Mark to withdraw the grievance as a personal favor to him and that he had weed and cigarettes coming to the Jail the following week, which he would share with Mark if Mark made the situation go away. Mark told Foley that he did not want the contraband, but that they would not have any problems going forward.

Foley went straight to the picket where Lee was watching and started talking to her. As Lee stared at Mark through the glass, he mouthed, "You're foul. You're foul." Lee started

shaking her head at Mark. Less than 5 minutes later, Lee and another guard granted inmate Jamari Martinez ("Martinez"), who also resided in Pod 6D, undocumented access to Pod 6E. Lee and Martinez were in a romantic relationship, and Lee smuggled contraband into the Jail for him. When Martinez entered the cell, he asked, "Who is Mark?" When Mark responded, Martinez aggressively told him that they needed to go to the corner and "talk." Mark understood this as a threat because going to the corner to "talk" meant fighting. Martinez demanded, "What's this I heard about you going to snitch on Ms. Lee?" Mark replied that he had not snitched and explained he missed a family visit. Martinez got ready to attack Mark, but Mark's cellmates in Pod 6E intervened and stopped the fight from happening. Mark told Martinez to leave. As Martinez exited the pod, Lee came on over the intercom and asked what was going on. One of the cellmates yelled back, "This is the second guy you sent in here to intimidate Mark. There won't be a third." Lee denied sending inmates in to intimidate Mark but told Martinez to hurry up and get out of Pod E. Martinez then spoke to Lee, who shook her head at Mark.

On September 16, 2015, there was a riot involving 20-30 inmates led by Foley and Martinez, who attacked Mark while he waited in the sixth floor church for services to start. Lee had orchestrated the attack to intimidate and retaliate against Mark for filing a grievance against her. At the time of the attack, no detention officers were present in the church or hallway to supervise inmates and the number of inmates on the sixth floor exceeded the number allowed by Jail policies.

Mark suffered a lacerated lip and other injuries to his face and the back of his head as well as emotional distress. Following the attack, Mark submitted a statement detailing both the initial intimidation by Foley and Martinez and the attack.

Mark claims that Harris County enabled Lee to direct Foley and Martinez to confront,

intimidate, and physically harm Mark because it failed to enforce its own policies and failed to train and supervise its detention officers despite knowing that detention officers were engaging in conduct that would result in constitutional violations and injury to inmates. Mark contends that Harris County had a custom or practice of tolerating such misconduct.

Mark alleges that another inmate, Jose Silva, filed a grievance against Lee on July 15, 2015, alleging that she had deprived him of medical attention and had repeatedly harassed him. In the course of that investigation, Harris County and Revelle were informed and aware that Lee was supplying drugs and other contraband to numerous inmates, including Martinez, in exchange for financial compensation, and that these inmates resided in Pods 6D and 6E, Lee's assigned pods, and yet they did not reassign Lee, nor did they provide Lee with additional training or supervision pending an investigation. Mark contends that IA did not even begin the investigation into these serious allegations until September 2015, waiting over a month after knowing about them.

Mark also contends that on July 30, 2015, inmate Ivory Johnson informed detention officers about being physically threatened by inmates from Pod 6E, including Foley and Martinez. Johnson had informed officials that as long as Lee supervised the sixth floor, his safety was in jeopardy because Lee was dating one of the inmates and would not put a stop to the threats. Mark alleges that despite these allegations, Lee was not reassigned or provided additional training or supervision pending an investigation, and no affirmative steps were taken to ensure inmate safety. Again, IA waited a month, until the beginning of September, to investigate the serious allegations against Lee.

Mark alleges that Silva's and Johnson's grievances were made while Lee was already the subject of two IA investigations, yet neither Harris County nor Revelle took prompt action to

investigate, suspend, or re-assign Lee. Mark further alleges that several detention officers were aware of rumors that Lee was in a relationship with inmate Martinez and/or inmate Jamon Smith and smuggled contraband into the Jail for both inmates. Detention Officer Chandra Rush, for example, was aware that Lee removed Martinez from his housing pod two to three times a week to speak with him outside of his cell. Despite these allegations, no one acted to remove Lee from duty on the sixth floor or to otherwise protect the inmates on that floor.

Mark also alleges that when IA opened its third investigation of Lee on September 1, 2015, officials should have scrutinized Lee's record and intervened in the situation promptly. However, it was only after the September 16, 2015 attack that Mark was moved for his safety.

Mark asserts Fifth and Fourteenth Amendment due process claims (individual and official capacity), First Amendment retaliation claim (individual capacity), and a state law claim for assault against Lee (Counts 1, 2, 4, and 5, respectively); Fifth and Fourteenth Amendment due process claim against Revelle in his individual capacity for failure to protect (Count 3); conditions of confinement deprivation of right to reasonable safety under the Fourteenth Amendment and deprivation of right to be free from retaliation under the First Amendment against Defendants in their official capacities, *i.e.*, Harris County (Counts 6 & 7). Mark moves for leave to amend if any of his claims are subject to dismissal. *See* Doc. No. 77 at 24.

Defendants Revelle and Hickman move to dismiss the claims against them, contending that the Fifth Amendment claims should be dismissed because the Fourteenth Amendment Due Process Clause, not the Fifth Amendment Due Process Clause, governs this dispute; the official capacity claims are redundant to claims against Harris County; Revelle was not deliberately indifferent to a substantial risk of serious harm to Mark's safety; and Harris County or the defendants in their official capacities did not have a policy, practice, or custom that was the

moving force of the violation of Mark's constitutional rights. These Defendants do not challenge the individual capacity claims against Lee (Counts 1, 4, and 5) at this time.

## II. LEGAL STANDARDS

### A. Rules 12(b)(6) and 12(c)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss for failure to state a claim that is filed after a defendant files an answer is a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 317 n.5 (5th Cir. 2009); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The standard for a Rule 12(c) motion is identical to the standard for a Rule 12(b)(6) motion. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

The court construes facts in the light most favorable to the nonmoving party, as a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

B.  **Qualified Immunity**

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (citation omitted). "When confronted with a qualified immunity defense at the pleading stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Waller*, 922 F.3d at 599 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).

III. **DISCUSSION**

A. **Rule 12(b)(6) Waiver**

As an initial matter, Mark contends that Defendants have waived the opportunity to move for dismissal under Rule 12(b)(6) because the motion was filed after they filed an answer to his previous, *pro se* complaint. Although Rule 12(h)(1) provides that a party can waive defenses listed under Rules12(b)(2)-(5), Rule 12(b)(6) is not listed there. FED. R. CIV. P. 12(h)(2). Indeed, Rule 12(h)(2) provides that "failure to state a claim upon which relief can be granted" can be raised in a pleading allowed under Rule 7(a), by motion under Rule 12(c), or "at trial." FED. R. CIV. P. 12(h)(2). Accordingly, Defendants have not waived the defense of "failure to state a claim upon which relief can be granted," and their present motion is considered a motion

for judgment on the pleadings under Rule 12(c). *See* FED. R. CIV. P. 12(c), (h); *Jebaco, Inc.*, 587 F.3d at 317 n.5.

### B. Evidence Attached to Motion to Dismiss

Mark also contends that the Court should only consider the pleadings, and not evidence presented by Defendants, when considering the motion to dismiss. Defendants attach a letter written by Revelle and Revelle's timesheet to their motion to dismiss, arguing that these show that he was not present at the Jail around the time of the riot and for several weeks thereafter and that he notified IA regarding the allegations that Lee was dealing drugs and having sex with inmates.

Generally, a court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. *See* FED. R. CIV. P. 12(d). In reviewing the Defendants' motion on the pleadings, the Court cannot consider whether the evidence outside the pleadings creates a genuine factual dispute. *See Waller*, 922 F.3d at 598 (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015)). Accordingly, for the purposes of this motion, Defendants' evidence will not be considered.

### C. Fifth Amendment Due Process Claims

Mark asserts due process claims under both the Fifth and Fourteenth Amendments. The Fourteenth Amendment's Due Process Clause applies to Mark's claims as a pre-trial detainee in a county jail with county actors, whereas Fifth Amendment due process claims apply only to claims against federal actors. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Because Mark does not allege that any of the defendants are federal actors, Mark's Fifth Amendment due process claims are DISMISSED, and his due process claims will be analyzed under the Fourteenth Amendment.

### D. Individual Capacity Claims against Revelle

Revelle contends that Mark has failed to state a claim against him in his individual capacity. He also asserts qualified immunity. Mark alleges that Revelle violated his due process rights by being deliberately indifferent to his right to reasonable safety when Revelle did not reassign or remove Lee from the sixth floor even though Revelle knew that Lee was bringing contraband onto the floor, knew that she was engaging in inappropriate relationships with inmates, and knew that Mark had written a grievance against Lee that was jeopardizing her job such that Mark was a target for retaliation.

"The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Fifth Circuit has applied the deliberate indifference standard set forth for Eighth Amendment claims in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), to pretrial detainees who allege episodic acts or omissions by jail employees. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647-48 (5th Cir. 1996) (*en banc*) ("We hold that the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs."); *see also Garza v. City of Donna*, 922 F.3d 626, 635-36 (5th Cir. 2019) (holding that the deliberate indifference inquiry does not require proof of subjective intent to cause harm but instead that "the official knows of and disregards an excessive risk to inmate safety"). To prevail on a claim for deliberate indifference, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Although supervisory officials cannot be held liable for the actions of their subordinates based on a theory of *respondeat superior*, a supervisor like Revelle may be held liable under § 1983 for a subordinate's actions if there is an affirmative link between the subordinate's misconduct and supervisory inaction. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). A supervisor, although not personally involved in unconstitutional conduct, may be liable if: (1) he failed to train or supervise the officers involved in the unconstitutional act; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Mark alleges that Revelle, as Lee's direct supervisor, was specifically aware of Lee's activities, including drug smuggling and sex with inmates, but failed to take prompt action against Lee that would have prevented Mark's injuries and the violations of Mark's constitutional rights. Mark alleges further that Revelle had specific knowledge of inmate Silva's allegations that Lee had harassed him, but Revelle failed to remove Lee from duty on the sixth floor. Mark alleges that Revelle was aware that Mark had filed a grievance against Lee and that Lee had a reason to target Mark, but that Revelle took no action to prevent Lee from harming Mark or other inmates and instead tried to convince Mark to withdraw the grievance (even though he knew of Lee's "shortcomings"[2] by that time, according to the pleadings). Mark further alleges that Revelle was aware of, and acted with deliberate indifference to, the

---

[2] Even Revelle and Hickman acknowledge that it is clear that Lee had "shortcomings" and was a wrongdoer. *See* Doc. No. 72 at 24.

substantial risk of serious harm posed by Lee and failed to restrain her from smuggling contraband into the Jail, fraternizing with inmates, and threatening inmates on the 6th floor. At the pleading stage, Mark has alleged sufficient facts to state a plausible claim against Revelle.

At the time of the events at issue, it was clearly established that deliberate indifference to a detainee's rights to reasonable safety violates the law. *See Farmer*, 511 U.S. at 842 (holding that a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"); *Hare*, 74 F.3d at 650. In conducting the qualified immunity analysis, the Court considers the allegations against Revelle through the lens of whether "the official's conduct was objectively reasonable under clearly established law existing at the time of the incident." *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001). At this pleading stage, where the Court accepts the facts as alleged in the pleadings as true, the Court cannot conclude at this time that Revelle's actions were objectively reasonable. Therefore, Revelle's assertion of qualified immunity at the pleading stage of the proceedings is DENIED.

### E. Official Capacity Claims

Mark sues Lee, Revelle, and Hickman in their official capacities (Counts 2, 6, & 7). A suit against Harris County officials in their official capacities is, in all respects except name, a suit against Harris County. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity."). Defendants contend that the official capacity claims should be dismissed as redundant of the claims against Harris County.

As Mark points out, the official capacity claims are not redundant because he did not name Harris County as a defendant in this case. Although the claims are treated as claims against Harris County "in all respects other than name," official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Graham*, 473 U.S. at 166 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55(1978)).

To state a claim against a municipal official in their official capacity, a plaintiff must plead facts to show that a policymaker promulgated a municipal policy—which may include a custom, practice, or failure to train or supervise—that was the moving force of the violation of the plaintiff's constitutional rights. *See Monell*, 436 U.S. at 694 (holding that a local government may only be sued when the "execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"); *see also Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622-24 (5th Cir. 2018) (discussing a "failure to train" claim as established in *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989), and holding that the plaintiff had alleged sufficient facts to state a plausible failure to train claim at the pleading stage).

### 1. Claims against Lee and Revelle

Defendants argue that the official capacity claims against Lee and Revelle must be dismissed because they are not policymakers. Whether a person is a policymaker is a matter of state law. *See McMillian v. Monroe County*, 520 U.S. 781, 784-88 (1997). In Texas, "the county sheriff is the county's final policymaker in the area of law enforcement." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Mark identifies Hickman as a policymaker, but there is

no indication that either Revelle or Lee is a policymaker for Harris County. *See McMillian*, 520 U.S. at 783 (official capacity claim failed because defendant was not a policymaker for the county for purposes of law enforcement). Accordingly, the official capacity claims against Lee and Revelle are subject to dismissal because they are not policymakers for Harris County as a matter of Texas law.

### 2. Claims against the Harris County Sheriff

Turning to the claims against Hickman in his official capacity (*i.e.*, Harris County),[3] Mark alleges that the failure to train or supervise Lee or the practice of tolerating guards' misconduct caused the deprivation of Mark's constitutional rights under the Fourteenth Amendment for reasonable safety and under the First Amendment for freedom from retaliation for filing a grievance, and that such failure to train or practice of tolerating guards' misconduct was maintained in deliberate indifference to Mark's constitutional rights.

To establish municipal liability for failure to train or supervise, a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (internal quotation marks and citation omitted). Ordinarily, a plaintiff must "demonstrate a pattern of violations" and show that the defendant's actions were "obviously likely to result in a constitutional violation." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations and internal quotation marks omitted). However, "even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an

---

[3] In that regard, the Court takes judicial notice that Sheriff Ed Gonzalez, and not Ronald Hickman, is the current Harris County Sheriff. Under Federal Rule of Civil Procedure 25(d), Hickman's successor is "automatically substituted as a party." FED. R. CIV. P. 25(d).

'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Regarding the first element, Mark has stated sufficient facts to state a plausible claim that there was a failure to supervise or train Lee, as discussed at length above regarding the claim against Revelle.

Second, Mark alleges facts to show that there was a causal link between the failure to supervise or the practice of tolerating guard misconduct and the violation of his constitutional rights. Mark alleges that Harris County had a pervasive practice of failing to enforce policies regarding inmate safety, contraband, and fraternization between detention officers and inmates, and this caused a violation of his constitutional rights. In that regard, Mark alleges that other inmates complained about Lee and her tactics of retaliation and intimidation, but that IA took over a month to investigate the serious allegations against her and no one at the County removed her from the sixth floor when the allegations regarding her crimes surfaced. In particular, Mark alleges that before the riot occurred on September 16, 2015, which Lee allegedly orchestrated, Harris County had initiated at least three IA investigations against Lee for (1) not properly accounting for an inmate for an entire day and failing to account for the inmates in her pod; (2) not properly restraining an inmate she was transporting, which caused injury to another guard; and (3) dealing drugs and having inappropriate relationships with inmates on the sixth floor. Mark also alleges that numerous officers and personnel knew that Lee was engaging in drug deals and sexual relationships with inmates, and that Harris County officials were aware of Lee's obvious shortcomings for months, yet no one removed Lee from the sixth floor or supervised or trained her in light of these serious allegations. Mark alleges that Harris County's lack of training or supervision, and/or practice of tolerating misconduct like Lee's allowed Lee to use

her inmate boyfriends to threaten and intimidate Mark in his cell and to orchestrate a riot where Mark was injured along with several other inmates.

At the pleading stage, Mark alleges facts to support a plausible inference that there was a causal connection between the failure to train or supervise Lee and the violation of Mark's constitutional rights. These facts also support a plausible inference that the risk of constitutional violations was or should have been a highly predictable consequence of Harris County's practice of tolerating such gross misconduct and/or failing to supervise or train guards regarding the dangers of introducing contraband and engaging in inappropriate relationships in the Jail in deliberate indifference to Mark's First and Fourteenth Amendment rights. Accordingly, the motion to dismiss the official capacity claims against the Harris County Sheriff is DENIED.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendants' motion to dismiss (Doc. No. 72) is **GRANTED** in part, in that Mark's Fifth Amendment due process claims are **DISMISSED**, and such will be construed as claims under the Fourteenth Amendment, and the official capacity claims against Lee and Revelle are **DISMISSED.**

2. The motion is otherwise **DENIED**.

3. Sheriff Ed Gonzalez, the current Harris County Sheriff, is substituted for former Sheriff Ronald Hickman pursuant to Federal Rule of Civil Procedure 25(d).

4. Mark's motion to amend is **GRANTED**, insofar as he may, within 21 days of the date of this Order, submit a Second Amended Complaint that substitutes current Sheriff Ed Gonzalez in place of the Defendants he names in their official capacities for Counts 2, 6, and 7, and cure any other deficiencies consistent with this Order.

The Clerk of Court will send a copy of this Order to the parties of record.

SIGNED at Houston, Texas, this 25th day of October 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE