UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DARRELL JACOBY MARK,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION: 4:17-cv-2784 |
| | § | |
| **RONALD HICKMAN,** *et al*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Darrell Jacoby Mark, by and through his counsel, brings this Second Amended Complaint against Defendants Sheriff Ed Gonzalez,[1] Sergeant John Charles Revelle, and Detention Officer Vanesha Lashon Lee, and alleges as follows:

### I.  Nature of the Action

1. Darrell Jacoby Mark ("Plaintiff" or "Mark") brings this civil rights action for damages pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2. The claims in this lawsuit arise from injuries Mark suffered after being attacked by numerous inmates acting under the direction of Defendant Detention Officer Vanesha Lashon Lee in retaliation for Mark's refusal to withdraw a grievance he had filed against her.

3. Defendant Sheriff Ed Gonzalez in his official capacity (hereinafter referred to as "Harris County" or "Sheriff") and Defendant Sergeant John Charles Revelle, individually, enabled Defendant Lee to orchestrate this attack through their practices of tolerating allegations of detention officer misconduct, failing to enforce Harris County's own policies regarding

---

[1] Although Sheriff Ronald Hickman served as Harris County Sheriff at all times relevant to this suit, Sheriff Ed Gonzalez is the current Harris County Sheriff. Per Rule 25(d) of the Federal Rules of Civil Procedure and this Court's order dated October 29, 2019 (Dkt. 85), Ed Gonzalez is substituted for Ron Hickman.

910703.1

inmate safety—such as prohibiting inmates from entering housing pods they were not assigned to and permitting inmates to move freely within the Harris County Jail without adequate supervision—and otherwise failing to adequately train, supervise, and control their detention officers and inmates. These practices, including the failure to enforce Harris County's own policies designed for inmate safety, continued for years prior to the attack on Plaintiff, and long after the risks and dangers were brought to the attention of Defendants Sheriff and Revelle during which time Defendants failed to remedy them.

4. Upon information and belief, in the months preceding the attack, Defendants Sheriff and Revelle were made aware of allegations that Defendant Lee supplied drugs and other contraband to multiple inmates whose housing units she supervised, and that she allowed these inmates to intimidate, harass, and attack other inmates without consequence. Despite this knowledge, Defendants Sheriff and Revelle never reassigned Defendant Lee to another housing unit and took no affirmative steps to ensure inmate safety until it was too late. As a result of Defendants' acts, omissions, policies, and practices, Mark suffered bodily injury and violations of his First Amendment right to petition and his Fourteenth Amendment right to substantive due process and reasonable safety while in government custody.

## II.   Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4). This Court has jurisdiction over Mark's state law claims pursuant to 28 U.S.C. § 1367 because they are based on the same operative facts.

6. Venue for this civil rights action is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mark's claims occurred in this district.

7. Mark has exhausted all administrative remedies through filing grievances.

910703.1

### III.    Parties

8.    Mark is, and was at all relevant times mentioned herein, a resident of the State of Texas and a citizen of the United States. Mark currently is within the custody of the Texas Department of Criminal Justice, TDCJ #2054187, and is confined at the French Robertson Unit, 12071 F.M. 3522, Abilene, Texas 79601.

9.    At all times relevant hereto, Sheriff Ronald Hickman, now substituted by Sheriff Ed Gonzalez (the "Sheriff") acts under color of state law in his capacity as Harris County Sheriff.  The Harris County Sheriff directs the Harris County Sheriff's Department and is the final policymaker for the Harris County Jail, located at 1200 Baker Street, Houston, Texas 77002 (the "Jail").  In his capacity as Sheriff, the Sheriff is responsible for the development, promulgation, and implementation of policies, procedures and customs for Harris County Jail officers and employees, including those named herein.  The Sheriff is sued in his official capacity.  The Sheriff has been served with process and has filed an answer.

10.   At all times relevant hereto, Defendant John Charles Revelle ("Defendant Revelle") acted under color of state law within the scope of his employment as a Sergeant with the Harris County Jail.  Defendant Revelle is sued in his individual capacity.  Defendant Revelle has been served with process and has filed an answer.

11.   At all times relevant hereto, Defendant Vanesha Lashon Lee ("Defendant Lee") acted under color of state law within the scope of her employment as a Harris County Jail Detention Officer.  At all times relevant hereto, Defendant Lee was assigned to supervise pre-trial detainees housed on the sixth floor of the Jail.  Defendant Lee is sued in her individual capacity.  After attempts to serve Defendant Lee were unsuccessful, this Court granted Plaintiff's motion for substituted service on May 31, 2019 (Dkt. 67).  Defendant Lee was served by publication on July 2, 2019 (Dkt. 78).  To date, Defendant Lee has not filed an answer or

otherwise appeared in this matter.

### IV.     Statement of Facts

**A.     Mark files a grievance against Defendant Lee, and Defendant Lee pressures Mark to withdraw it.**

12.     At all times relevant hereto, Mark resided in "Pod 6E" on the sixth floor of the Jail as a pre-trial detainee. On or about July 26, 2015, Mark's uncle, Roald Mark, came to the Jail to visit with Mark. Roald Mark waited for hours to visit with Mark, but Mark was never brought to the visitation room. Defendant Lee was the detention officer on duty in Mark's pod at the time. When Mark learned what had happened, Mark submitted a formal grievance against Defendant Lee on or about July 27, 2015 complaining of the missed visit. A true and correct copy of that grievance is attached as **Exhibit A**.

13.     On or about August 10, 2015, Defendant Revelle met with Mark to discuss his grievance. Upon information and belief, Defendant Revelle served as Defendant Lee's direct supervisor at all times relevant hereto. Defendant Revelle offered to double Mark's next visitation time so that the grievance against Defendant Lee could be closed. Mark declined Defendant Revelle's offer and explained that he wanted steps taken to prevent similar conduct in the future.

14.     On or about August 10, 2015, Defendant Revelle also spoke with Defendant Lee about the grievance. After leaving Defendant Revelle's office, Defendant Lee confronted Mark and demanded that he withdraw the grievance. Defendant Lee informed Mark that his grievance was the second one filed against her and she believed her job was now in jeopardy unless the grievance was withdrawn.

15.     At the time Mark filed his grievance, Defendant Lee was the subject of at least two Internal Affairs investigations:

910703.1

- In April 2015, Defendant Lee did not properly account for the inmates in her pod as required by Jail policy, and as a result, an inmate was unaccounted for for an entire day. Defendant Lee was the subject of an internal investigation (IAD# 15-0390-0501) regarding this incident and considered untruthful in the course of the investigation. This investigation was pending when Mark submitted his grievance.

- In May 2015, Defendant Lee transported an inmate without the proper restraints in contravention of Jail policy, and at least one detention officer was injured as a result. Defendant Lee was again considered untruthful in the course of the investigation of this incident (IAD# 15-0439-0515). This investigation was also pending when Mark submitted his grievance.

16. Mark refused to withdraw his grievance and indicated that he needed to speak with his uncle before he even considered withdrawing the grievance because it was his uncle's time that had been wasted. Mark then called his uncle who supported Mark's decision not to withdraw the grievance. Roald Mark told Mark that if Defendant Lee wanted to find out his reasons for supporting Mark's decision to not withdraw the grievance, she could call him.

17. Defendant Lee watched Mark make the phone call from the picket area. Mark went to speak with Defendant Lee after concluding the call with his uncle and informed her that his uncle did not want him to withdraw the grievance and that she could call his uncle to find out why if she had a problem with it. Mark was shocked when Defendant Lee actually called his uncle. Defendant Lee told Mark not to tell anyone about the call, adding, "This is between me and you." Defendant Lee immediately called Roald Mark using a picket patrol phone. Mark heard the conversation on speaker phone.

18. Defendant Lee asked Roald Mark if he was Mark's uncle and told him, "Your nephew wrote a grievance on me. You need to tell him to write a statement to get the grievance off my back." Roald Mark explained that Mark had a good reason for filing that grievance. Defendant Lee, however, would not take "no" for an answer and told Roald Mark, "they might

5

910703.1

try to take my job from me" if the grievance is not resolved. Defendant Lee failed to persuade Roald Mark and ended the call. Defendant Lee sent Mark back to his pod after the conversation.

19. Shortly thereafter, Mark learned from other inmates that Defendant Lee had ties to several inmates who could harm him. Fearing for his safety as a result of Defendant Lee's intimidation, Mark submitted false statements on August 11, 2015 and again on August 13, 2015 indicating that his grievance had been resolved.

**B. Under mounting pressure from multiple Internal Affairs investigations into her misconduct (but with no meaningful remedial action undertaken), Defendant Lee personally threatens Mr. Mark and sends inmates to intimidate him for refusing to withdraw his grievance.**

20. On September 1, 2015, Internal Affairs began a *third* investigation (IAD# 2015-00735) of Defendant Lee in connection with allegations, discussed *infra*, that Defendant Lee was dating an inmate and smuggling contraband into the Jail for that inmate.

21. On September 10, 2015, the Administrative Disciplinary Committee sustained the complaint against Defendant Lee in IAD# 15-0390-0501, discussed *supra*, and determined that Defendant Lee should be suspended for 3 days and placed on probation for 90 days.

22. Just days after the complaint was sustained, Defendant Lee again confronted Mark. On or about September 13, 2015, Defendant Lee—who was on duty near the sixth floor housing pods and apparently unaware that Mark had withdrawn the grievance—pulled Mark out of his housing pod and again demanded that he retract his grievance.

23. Defendant Lee threatened Mark. "You don't know me," she said. "You don't know who I am," she continued, "**but you're about to find out soon enough.**" Unsure of what to do, Mr. Mark returned to his housing pod, Pod 6E.

24. After Mark had returned to Pod 6E, Defendant Lee granted inmate Kenneth Foley ("Foley"), who resided in adjacent Pod 6D, access to enter Mark's housing pod. Upon

6

910703.1

information and belief, Jail policies prohibited detention officers from granting inmates access to enter housing pods where they did not reside. Upon further information and belief, another Harris County Jail employee permitted Foley to exit his own housing Pod 6D before Defendant Lee allowed him to enter Pod 6E.

25. Foley entered Pod 6D and immediately asked, "Who is Mark?" Upon information and belief, Foley did not know Mark prior to this incident and had been given his name by Defendant Lee, who ordered Foley to intimidate Mark. When Foley found Mark, he asked Mark if he "wr[ote] a grievance against Ms. Lee." Mark responded that he had filed a grievance because of his missed visitation. Foley replied, "Well, look. Don't do that. **We need people like her to get stuff.**" Foley asked Mark to withdraw the grievance "as a personal favor" to him. He told Mark he had weed and cigarettes coming into the Jail that week (presumably from Defendant Lee) and that he would share them with Mark if Mark made the situation go away. Mark was not interested in the contraband but did want to be done with this situation with Defendant Lee. Mark told Foley to tell Defendant Lee that they would not have any problems going forward.

26. Foley went straight to the picket where Defendant Lee had been watching and started talking to her. Defendant Lee stared at Mark through the glass, and Mark mouthed back to her, "You're foul. You're foul," because of her intimidation tactics. Defendant Lee started shaking her head at Mark.

27. Less than five minutes later, Defendant Lee granted inmate Jamari Martinez ("Martinez"), who also resided in Pod 6D, access into Pod 6E. Upon information and belief, Defendant Lee and Martinez were in a romantic relationship, and Defendant Lee smuggled contraband into the Jail for Martinez on a regular basis. Upon further information and belief,

7

another Harris County Jail employee permitted Martinez to exit his own housing pod, 6D. Like Foley, Martinez immediately asked, "Who is Mark?" Upon information and belief, Martinez did not know Mark and had been given Mark's name by Defendant Lee for the purpose of intimidating him.

28. When Martinez found Mark, he told him, "We need to talk." When Mark began to respond, Martinez aggressively told him, "No, we need to go to the corner and 'talk.'" Mark understood this as a threat because "the corner" is where inmates go to fight. Martinez went to the corner, sat his cup down, untucked his shirt, and started pounding his fists together. He asked, "What's this I heard about you going to snitch on Ms. Lee?" Mark replied that he had not "snitched" on Defendant Lee and explained his missed family visit. Martinez responded, "You still haven't told me a good enough reason to snitch on Ms. Lee," and got ready to attack Mark.

29. The other inmates in Pod 6E intervened and stopped the fight from happening. Mark told Martinez to leave. As Martinez started to exit the pod, Defendant Lee came on over the intercom and asked what was going on. Inmate Neal Bland yelled back, "This is the second guy you sent in here to intimidate Mark. There won't be a third." Defendant Lee denied sending the inmates to intimidate Mark, but then told Martinez to hurry up and get out of Pod 6E and shut the door behind him. Upon exiting Pod 6E, Martinez immediately went to talk to Defendant Lee, who began shaking her head again.

    C.    **Mark is attacked by multiple inmates under Defendant Lee's direction.**

30. On or about September 16, 2015, just days after Defendant Lee directed inmates Foley and Martinez to confront and physically threaten Mark, approximately 20–30 inmates—led by Foley and Martinez—attacked Mark while he waited in the sixth floor church for services to begin. Upon information and belief, Defendant Lee orchestrated the attack to further intimidate and retaliate against Mark for filing a grievance against her.

8

910703.1

31.     At the time of the attack, upon information and belief, no detention officers were present on the sixth floor to adequately supervise inmates in accordance with Jail policies, and the number of inmates present on the sixth floor violated Jail policies regarding the movement of inmates. Upon information and belief, there were no detention officers in the church or the hallway at the time of these events.[2]

32.     As a result of the attack, Mark suffered a lacerated lip and other injuries to his face and the back of his head as well as physical and emotional distress. Following the attack, Mark submitted a statement detailing both the initial intimidation by inmates Foley and Martinez and the attack. A true and correct copy of Mark's statement is attached as **Exhibit C**.

**D.      Defendants Sheriff and Revelle failed to enforce Jail policies, and Harris County's customs and practices failed to protect inmates.**

33.     Defendants Sheriff and Revelle enabled Defendant Lee to direct Foley and Martinez to confront, intimidate, and physically harm Mark because they failed to enforce Harris County's own policies regarding inmate safety, failed to supervise inmates, and otherwise failed to adequately train, supervise, and control detention officers—despite knowing that detention officers were engaging in conduct that would result in constitutional violations and injury to inmates. Defendants Sheriff and Revelle had a practice of tolerating such misconduct.

34.     For example, on or about July 15, 2015, an unrelated grievance was filed by inmate Jose Silva ("Silva"), alleging that Defendant Lee had deprived him of necessary medical attention and repeatedly harassed him. As part of the investigation into Silva's allegations, officers with the Harris County Sheriff's Office, including Defendant Revelle, were informed

---

[2] Harris County officials were well aware that adequate supervision of inmates had been an issue at the Jail. Specifically, an investigation into the Jail conducted by the U.S. Department of Justice in 2008 revealed that the Jail "lack[ed] . . . an adequate plan for managing a large and sometimes violent detainee population." See **Exhibit B** at p. 14. The investigation further revealed that the Jail was overcrowded, and that such "crowded conditions currently exacerbate[d] many of the constitutional deficiencies identified," including inadequate protection from harm. *Id.* at pp. 14, 17.

9

910703.1

that Defendant Lee was supplying drugs and other contraband to numerous Jail inmates, including Martinez, in exchange for financial compensation. Upon information and belief, these inmates resided in Pods 6D and 6E, which Defendant Lee was assigned to supervise. Despite these allegations, Defendant Lee was not reassigned to another floor or another housing unit, nor was she provided with additional training or supervision pending an investigation. Internal Affairs did not begin its investigation of Defendant Lee until September, as noted *supra*, over a month after these serious allegations were made.

35.     On or about July 30, 2015, inmate Ivory Johnson ("Johnson") informed detention officers that he was being physically threatened by inmates from Pod 6E, including Foley and Martinez. Johnson informed detention officers that as long as Defendant Lee supervised the sixth floor, his safety was in jeopardy because Defendant Lee was "dating" one of the inmates and therefore would not put a stop to the threats. Despite this allegation, Defendant Lee was not reassigned to another floor or another housing unit, nor was she provided with additional training or supervision pending an investigation, and no affirmative steps were taken to ensure inmate safety. Again, Internal Affairs did not begin an investigation until September, over a month after the allegations were made.

36.     Moreover, Silva's and Johnson's grievances were made while Defendant Lee was already the subject of *two* pending IAD investigations. Yet, neither the Sheriff nor Defendant Revelle (nor any other Harris County employee) took prompt action to investigate, suspend, or re-assign Defendant Lee.

37.     Upon information and belief, numerous detention officers, including Detention Officers Bello, Walker, Johnson, Zazueta, and Zientek, were aware of rumors that Defendant Lee was in a relationship with inmate Martinez and/or inmate Jamon Smith and smuggled contraband

910703.1

into the Jail for both. Detention Officers Bello, Walker, and Johnson were also aware of allegations that Defendant Lee, as well as Officers David Chilson and Atallah Gaines, were bringing contraband to the Jail. Detention Officer Chandra Rush was aware that Defendant Lee removed Martinez from his housing pod two to three times a week to speak to him outside of his cell. Despite these allegations, no one took action to remove Defendant Lee from duty on the sixth floor or to otherwise protect the inmates on that floor.

38. Furthermore, when the IAD opened its *third* investigation of Defendant Lee in less than six months, upon information and belief, the Jail's Early Personnel Warning system should have been activated and was not. Activation of the Early Personnel Warning system in accordance with Jail policy would have resulted in timely scrutiny of Defendant Lee's record and intervention that could have prevented the attack against Mark. Only after the September 16, 2015 attack was Mark finally moved to another Harris County jail facility for his safety.

### III.   Causes of Action

A. **Count 1 – Failure to Protect in violation of the Fourteenth Amendment to the Constitution – Episodic Acts and Omissions (42 U.S.C. § 1983) (against Defendant Lee in her individual capacity)**

39. Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

40. By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the right provided through the Fourteenth Amendment of the United States Constitution not to be deprived of liberty without due process of law.

41. Acting under color of state law and within the scope of her employment as a Harris County Jail employee, Defendant Lee was deliberately indifferent to Mark's needs and constitutional rights when she committed the various acts and omissions described *supra*.

Specifically, Defendant Lee was aware of, and acted with deliberate indifference to, the substantial risk of serious harm to Mark posed by her acts and/or omissions when she organized and permitted inmates to physically threaten, intimidate, and attack Mark.

42. Mark was in Defendant Lee's care, control, and custody as a pre-trial detainee of the Harris County Jail. Defendant Lee's intentional acts and deliberate indifference resulted in violations of Mark's civil rights guaranteed by the Fourteenth Amendment to the Constitution of the United States of America, and resulted in the deprivation of Mark's liberty without due process and of the privileges and immunities guaranteed to him, rendering Defendant Lee liable under 42 U.S.C. § 1983.

43. Defendant Lee acted intentionally, maliciously, oppressively and in reckless disregard for Mark's constitutional rights, thereby entitling Mark to an award of punitive damages against Defendant Lee.

**B.** **Count 2[3] – Failure to Protect in violation of the Fourteenth Amendment to the Constitution – Episodic Acts and Omissions (42 U.S.C. § 1983) (against Defendant Revelle in his individual capacity)**

44. Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

45. By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the right provided through the Fourteenth Amendment of the United States Constitution not to be deprived of liberty without due process of law.

46. Acting under color of state law and within the scope of his employment as a Harris County employee, Defendant Revelle was deliberately indifferent to Mark's needs and constitutional rights when he permitted Defendant Lee to commit the various acts and omissions

---

[3] Formerly Count 3 in Plaintiff's First Amended Complaint (Dkt. 68).

described *supra*. Specifically, and upon information and belief, as Defendant Lee's direct supervisor, Defendant Revelle was specifically aware of Defendant Lee's activities—including her smuggling of contraband into the Jail and improper fraternization of inmates—but failed to take prompt action against Defendant Lee that would have prevented Mark's injuries.

47. Further, despite Defendant Revelle's specific knowledge of Silva's allegations against Defendant Lee, Defendant Revelle failed to remove Defendant Lee from duty on the sixth floor where she smuggled contraband to inmates. Additionally, Defendant Revelle was aware that Mark had filed a grievance against Defendant Lee and that Defendant Lee had reason to target Mark, but took no action to prevent his subordinate from harming Mark or other inmates.

48. Defendant Revelle's specific knowledge of Defendant Lee's behavior coupled with his responsibility—upon information and belief—to supervise Defendant Lee, amounts to his direct participation in the violation of Mark's constitutional rights to reasonable safety.

49. Defendant Revelle was aware of, and acted with deliberate indifference to, the substantial risk of serious harm to Mark posed by Defendant Lee's acts and/or omissions when he failed to restrain Defendant Lee from smuggling contraband into the Jail, fraternizing with inmates, and otherwise threatening the safety of inmates on the sixth floor.

50. Mark was in Defendant Revelle's care, control, and custody as a pre-trial detainee of the Harris County Jail. Defendant Revelle's intentional acts and deliberate indifference resulted in violations of Mark's civil rights guaranteed by the Fourteenth Amendment to the Constitution of the United States of America, and resulted in the deprivation of Mark's liberty without due process and of the privileges and immunities guaranteed to him, rendering Defendant Revelle liable under 42 U.S.C. § 1983.

**C. Count 3[4] - Failure to Protect in violation of the Fourteenth Amendment to the Constitution – Episodic Acts and Omissions Reflecting County Policy (42 U.S.C. § 1983) (against Defendant Sheriff in his official capacity, e.g., Harris County)**

51. Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

52. By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the right provided through the Fourteenth Amendment of the United States Constitution not to be deprived of liberty without due process of law.

53. Acting under color of state law and within the scope of her employment as a Harris County Jail employee, Defendant Lee was deliberately indifferent to Mark's needs and constitutional rights when she committed the various acts and omissions described *supra*. Specifically, Defendant Lee was aware of, and acted with deliberate indifference to, the substantial risk of serious harm to Mark posed by her acts and/or omissions when she organized and permitted inmates to physically threaten, intimidate, and attack Mark.

54. Acting under color of state law and within the scope of his employment as a Harris County employee, Defendant Revelle similarly was deliberately indifferent to Mark's needs and constitutional rights when he permitted Defendant Lee to commit the various acts and omissions described *supra*. Specifically, and upon information and belief, as Defendant Lee's direct supervisor, Defendant Revelle was specifically aware of Defendant Lee's activities—including her smuggling of contraband into the Jail and improper fraternization of inmates—but failed to take prompt action against Defendant Lee that would have prevented Mark's injuries.

---

[4] Formerly Count 2 in Plaintiff's First Amended Complaint (Dkt. 68). Per the Court's order dated October 29, 2019 (Dkt. 85), Sheriff Ed Gonzalez is substituted in place of Defendant Lee in her official capacity.

55. The actions and omissions of both Defendants Lee and Revelle resulted from and are evidence of Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through the failure to enforce Jail policies relating to inmate safety, contraband, and fraternization between detention officers and inmates. Harris County is liable for the conduct of Defendants Lee and Revelle because Defendant Lee and Revelle's actions were the result of Harris County's custom and practice of failing to enforce its policies regarding inmate safety, inmate movement, contraband, and detention officers' fraternization with inmates is not reasonably related to any legitimate governmental objective, evidences Harris County's objective deliberate indifference to Mark's constitutional rights, and caused constitutional injuries and physical harm to Mark.[5]

56. Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through failure to enforce Jail policies, was the moving force behind Mark's constitutional injuries. As a proximate result of Harris County's custom and practice, Harris County enabled Defendant Lee to orchestrate the retaliatory attack against Mark in violation of Mark's right to reasonable safety while in government custody guaranteed by the Fourteenth Amendment. Mark suffered violations of his constitutional rights, as well as physical injury, mental anguish and emotional distress, and was otherwise damaged and injured.

---

[5] Harris County's liability is not predicated on the assumption that Defendants Lee and Revelle are policymakers. Rather, Harris County's liability is predicated on the actions and omissions of Defendants Lee and Revelle, which resulted from Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety. *Sanchez v. Young County, Texas*, 866 F.3d 274, 280 (5th Cir. 2017), cert. denied sub nom. *Sanchez v. Young County, Tex.*, 139 S. Ct. 126, 202 L. Ed. 2d 198 (2018) ("A government entity may incur Section 1983 liability for episodic acts and omissions injurious to a pretrial detainee if plaintiffs first prove that County officials, acting with subjective deliberate indifference, violated her constitutional rights; and plaintiffs then establish that the County employees' acts resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights."); *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (To establish municipal liability in an episodic-act case, a plaintiff must show "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.").

910703.1

**D.     Count 4 – Deprivation of Plaintiff's Right to Free Speech pursuant to the First and Fourteenth Amendments to the Constitution (42 U.S.C. § 1983) (against Defendant Lee in her individual capacity)**

57.     Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

58.     By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the right provided through the First and Fourteenth Amendments of the United States Constitution to Free Speech.

59.     Acting under color of state law and within the scope of her employment as a Harris County Jail employee, Defendant Lee deliberately orchestrated an attack on Mark in retaliation against him for his exercise of his First Amendment right to petition through filing a grievance.  Defendant Lee acted with deliberate indifference to Mark's right to Free Speech pursuant to the First and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

60.     Defendant Lee acted intentionally, maliciously, oppressively and in reckless disregard for Plaintiff's constitutional rights, thereby entitling Mark to an award of punitive damages against Defendant Lee.

**E.     Count 5 – Assault (against Defendant Lee)**

61.     Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

62.     Defendant Lee intentionally directed inmates Foley, Martinez and others to confront, threaten, and physically attack Mark in retaliation for his refusal to withdraw his grievance.  As a direct and proximate result of Defendant Lee's actions, inmates Foley, Martinez, and others in fact attacked Mark, causing him to suffer bodily injury, and entitling him to damages.

**F.     Count 6 – Deprivation of Plaintiff's Right to Reasonable Safety pursuant to the Fourteenth Amendment to the Constitution – Conditions of Confinement (42 U.S.C. § 1983) (against Defendant Sheriff in his official capacity, e.g., Harris County)**

63.     Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

64.     By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the rights provided through the Fourteenth Amendment of the United States Constitution to reasonable safety and to be secure in basic human needs while in state custody.

65.     Harris County is liable for the conduct of Defendant Lee because Defendant Lee's actions were the result of Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through failure to enforce Jail policies relating to inmate safety, contraband, and fraternization between detention officers and inmates. Defendant Lee deliberately orchestrated a retaliatory attack on Mark after engaging in an extended and pervasive pattern of misconduct that Harris County knew of but ignored.  Rather than take affirmative steps to prevent injury to or ensure the safety of Mark, Defendants Sheriff and Revelle failed to act and/or took ineffectual actions under the circumstances. Harris County tolerated violations of its policies, including repeated acts and omissions by Defendant Lee and other detention officers that were so pervasive they reflected an intended policy or practice of Harris County. Harris County's custom and practice of failing to enforce its policies regarding inmate safety, movement, contraband, and detention officers' fraternization with inmates is not reasonably related to any legitimate governmental objective and caused constitutional injuries and physical harm to Mark.

910703.1

66. Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through failure to enforce Jail policies, was the moving force behind Mark's constitutional injuries. As a proximate result of Harris County's custom and practice, Defendant Harris County enabled Defendant Lee to orchestrate the retaliatory attack against Mark in violation of Mark's right to reasonable safety while in government custody guaranteed by the Fourteenth Amendment. Mark suffered violations of his constitutional rights, as well as physical injury, mental anguish and emotional distress, and was otherwise damaged and injured.

G. **Count 7 – Deprivation of Plaintiff's Right to Free Speech pursuant to the First and Fourteenth Amendments to the Constitution (against Defendant Sheriff in his official capacity, e.g., Harris County)**

67. Mark re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

68. By reason of the foregoing, Mark was deprived of his rights, remedies, privileges and immunities guaranteed to every citizen of the United States, including, but not limited to, the rights provided through the First and Fourteenth Amendments of the United States Constitution to Free Speech.

69. Harris County is liable for the conduct of Defendant Lee because Defendant Lee's actions were the result of Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through failure to enforce Jail policies relating to inmate safety, contraband, and fraternization between detention officers and inmates. Defendant Lee deliberately orchestrated an attack on Mark in retaliation for his exercise of his First Amendment right to petition, after engaging in an extended and pervasive pattern of misconduct that Harris County knew of but ignored. Rather than take affirmative steps to prevent injury to or ensure the safety of Mark, Defendants failed to act and/or took ineffectual

18

actions under the circumstances. Harris County tolerated violations of its policies, thereby allowing the constitutional injuries to Mark.

70. Harris County's custom and practice of failing to adequately supervise inmates or otherwise ensure their safety, including through failure to enforce Jail policies, was the moving force behind Mark's constitutional injury. As a proximate result of Harris County's custom and practice, Harris County enabled Defendant Lee to orchestrate the retaliatory attack against Mark in violation of Mark's right to Free Speech guaranteed by the First and Fourteenth Amendments. Mark suffered violations of his constitutional rights, as well as physical injury, mental anguish and emotional distress, and was otherwise damaged and injured.

## Attorneys' Fees

71. Mark is entitled to his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## Prayer

72. Based on the forgoing, Mark respectfully requests the following relief:

   a. Actual damages for the injuries Mark has suffered in an amount to be determined at trial;

   b. Punitive damages in an amount to be determined at trial;

   c. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b);

   d. All other relief to which Mark is entitled.

Dated:  November 19, 2019

Respectfully Submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

*/s/ Lee L. Kaplan*
Lee L. Kaplan (Fed. Bar No. 1840)
TBA 11094400
*Attorney-in-Charge*
Crystal N. Robles (Fed. Bar No. 2070295)
TBA 24083754
Jacquelyn R. Rex (Fed. Bar No. 3160021)
TBA 24098317
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
lkaplan@skv.com
crobles@skv.com
jrex@skv.com

**ATTORNEYS FOR PLAINTIFF
DARRELL JACOBY MARK**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 19, 2019, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Lee L. Kaplan*
Lee L. Kaplan

910703.1